UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CASTILLO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAESARS ENTERTAINMENT CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-05781-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER**<br><br>Docket No. 20 |

Plaintiff Justin Castillo has filed a class action against Defendants Caesars Entertainment Corporation and Desert Palace, LLC (collectively, "Caesars"), asserting a violation of the Telephone Consumer Protection Act ("TCPA"). According to Mr. Castillo, Caesars violated the statute because it sent unsolicited marketing and advertising text messages to its hotel guests. Currently pending before the Court is Caesars's motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court agrees with Caesars that personal jurisdiction is lacking. However, because a lack of personal jurisdiction is a defect capable of being cured, the Court shall transfer the case, instead of dismissing it outright, to the District of Nevada pursuant to 28 U.S.C. § 1631. In the alternative, the Court holds that, even if it does have personal jurisdiction over Caesars, transfer is appropriate pursuant to § 1404.

## I.　　**FACTUAL AND PROCEDURAL BACKGROUND**

In his complaint, Mr. Castillo alleges as follows.

Mr. Castillo resides in Los Angeles, California. In April 2018, he checked into the Caesars Palace hotel, which is located in Las Vegas, Nevada. *See* Compl., ¶¶ 6, 16. Approximately half

an hour later, he received the following message:

> Hi! I'm Ivy, your personal concierge at Caesars Palace. Text me for hotel information, towels, housekeeping requests and more. Text STOP to quit. Info/terms: j.mp/IvyTerms. I look forward to assisting you during your stay. Text me your first request now!

Compl., ¶ 16. At the time he received the text message, Mr. Castillo had not authorized Caesars to send him marketing-related text messages. *See* Compl. ¶ 19. Mr. Castillo does not allege that he received any more messages from Caesars.

According to Mr. Castillo, Caesars worked with GoMoment, a California-based company, "to roll out [the] guest-engagement platform known as" Ivy. Compl. ¶ 10. As alleged in the complaint, GoMoment was responsible for developing and maintaining the Ivy platform, but Caesars was responsible for implementing the platform for its hotel. *See* Compl. ¶¶ 11-12.

## II. DISCUSSION

Caesars initially moves for a dismissal of the instant case based on lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Because Mr. Castillo does not claim that this Court has general jurisdiction over Caesars, it need only consider whether there is specific jurisdiction. At this juncture in the proceedings, Mr. Castillo need only make a prima facie showing of specific jurisdiction. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (noting that, where no evidentiary hearing is held and a court simply receives written materials from the parties, "a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss").

Although a prima facie showing is not a high threshold, Mr. Castillo has nevertheless failed to make the requisite showing in the instant case. A critical element of specific jurisdiction is that the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state or purposefully directed its activities toward the forum state. *See Mavrix Photo, Inc., v. Brand Techs., Inc.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011). Under Ninth Circuit law, courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

The instant case, which involves an alleged TCPA violation, is based on a tort, not a contract, and thus the purposeful direction should apply. At the hearing, Mr. Castillo conceded that he could not meet the purposeful direction test. Presumably, this concession was based on the fact that Caesars, which is located in Nevada, did not take any action itself in California. Nor was its conduct directed at California; Mr. Castillo was in Las Vegas when he received the unsolicited text message. *Cf. Walden v. Fiore*, 571 U.S. 277, 291 (2014) (noting that the defendant DEA agent's conduct – *i.e.*, seizing the claimants' cash at a Georgia airport – "occurred entirely in Georgia" and thus jurisdiction in Nevada was lacking). Mr. Castillo argues, however, that, under *Freestream Aircraft (Berm.) Ltd. v. Aero Law Group*, 905 F.3d 597, 603 (9th Cir. 2018), he has established the necessary purposeful act. Alternatively, he asserts that he has met the purposeful availment test, which although generally applied in contract cases has, in some instances, been used in tort cases.

Contrary to what Mr. Castillo suggests, *Freestream* does not establish a basis for specific jurisdiction in tort cases separate from the purposeful direction test. In *Freestream*, the Ninth Circuit simply found that, in the case before it, a purposeful act had been committed in the forum state because the defendants had allegedly committed the intentional tort of defamation while present in the forum state. *See id.* at 603. Here, as noted above, there is no real dispute that Caesars never took any action itself in California, and its conduct was not aimed or directed at California.

Mr. Castillo's position, therefore, rests on the contention that, even though Caesars itself is based in Nevada, GoMoment took action on behalf of Caesars in California, and GoMoment's contacts with California may be attributed to Caesars. Mr. Castillo thus asserts an agency theory to establish purposeful direction. Mr. Castillo's purposeful availment argument also relates to an agency theory because Mr. Castillo is not arguing that Caesars purposefully availed itself of the privilege of conducting activities in California by contracting with him[1] but rather because it

---

[1] The purposeful availment analysis is most often applied to a contractual dispute between the plaintiff and defendant. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

3

contracted with GoMoment.[2]

The current state of the law is not entirely clear on the issue of whether and, if so, when an agent's contacts may be attributed to its principal for jurisdictional purposes. *Daimler AG v. Bauman*, 751 U.S. 117 (2014), indicates it is possible to use an agency relationship to establish specific jurisdiction, *see id.* at 135 n.13 (stating that "[a]gency relationships . . . may be relevant to the existence of specific jurisdiction" – *e.g.*, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there") (emphasis omitted), and the Ninth Circuit has not suggested otherwise. But neither the Supreme Court nor the Ninth Circuit has provided guidance as to, under what circumstances, it is appropriate to attribute contacts. At best, the Ninth Circuit has indicated that one specific approach it had adopted prior to *Daimler* is no longer valid. *See Williams v. Yahama Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (indicating that, post-*Daimler*, the following test cannot be used for general *or* specific jurisdiction – *i.e.*, "whether the [agent] 'performs services that are sufficiently important to the [principal] that if [the principal] did not have a representative to perform them, the [principal's] own officials would undertake to perform substantially similar services'").

However, even assuming in Mr. Castillo's favor that attribution of an agent's contacts is permissible, Mr. Castillo has failed to make out a prima facie case of specific jurisdiction. As alleged in the complaint, GoMoment may have assisted Caesars in developing and maintaining the platform used to transmit the text in question. But nothing in the complaint indicates that GoMoment played anything more than this very limited role. The actual implementation of the platform and the use of the platform were all done by Caesars in Nevada. *See* Compl. ¶ 11 (quoting Caesars's Chief Experience Officer, Michael Marino, on the collaboration between Caesars and GoMoment: "[GoMoment has] a tried and true execution plan that allows us to launch Ivy at a property with less than a month lead time[;] [t]he set-up is fairly straightforward with drafting answers to the common questions *that we train Ivy on* in the IBM Watson platform,

---

[2] For purposes of this opinion, the Court assumes, in Mr. Castillo's favor, that the purposeful availment test may be used in tort cases, and not just contract cases. *See, e.g.*, *Valentine v. Nebuad, Inc.*, No. C08-05113 TEH, 2009 U.S. Dist. LEXIS 93454 (N.D. Cal. Oct. 6, 2009) (applying the purposeful availment test in a tort case).

4

*setting up user accounts and conducting the on-site trainings for the agents*") (emphasis added). Thus, the relevant contacts with respect to the alleged misconduct in the instant case were all those of the principal (Caesars); the role of GoMoment in the effectuation of the contact with Mr. Castillo was attenuated.[3] *Compare Valentine*, 2009 U.S. Dist. LEXIS 93454, at *24 (holding that the economic reality was that much of the misconduct took place in the forum state where the agent/co-defendant acted on the behalf of other defendants). *See also Walden*, 571 U.S. at 285 (noting that "we have upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned *continuing and wide-reaching contacts*' in the forum State, or by circulating magazines to '*deliberately exploi[t]' a market* in the forum State") (emphasis added). Several district courts have refused to find personal jurisdiction over an out-of-state defendant simply because the defendant used a platform that was developed and maintained by an in-state third party. *See, e.g., Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 948-52 (N.D. Cal. 2017) (declining jurisdiction over out-of-state website operators using embedded codes from Facebook to track patrons' browsing histories even though Facebook was based in California); *OOO Brunswick Rail Mgmt. v. Sultanov*, Case No. No. 5:17-cv-00017-EJD, 2017 WL 264047 (N.D. Cal. Jan. 20, 2017) (declining jurisdiction over Gmail users based solely on use of Google's product).

The Ninth Circuit's *Morrill* decision is also instructive. In *Morrill*, the plaintiffs were an attorney and the law firm where he practiced. The plaintiffs were based in Arizona. They represented certain individuals and entities in connection with a construction project in Nevada. The plaintiffs' clients filed a civil action in Nevada related to the construction project, and the plaintiffs were counsel in that action. According to the plaintiffs, the defendants in the Nevada civil action, as well as their lawyers, engaged in a campaign to harm the plaintiffs in retaliation for

---

[3] Mr. Castillo's claim – made in his papers, not the complaint – that GoMoment had servers in California and that those servers were used to send the unsolicited text messages does not affect this analysis. *Cf. Morrill*, 873 F.3d at 1146-47 (noting that physical entry into the forum state is a relevant contact but "physical entry that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement").

5

their role as counsel. For example, the defendants and their lawyers initiated proceedings in Arizona, where the plaintiffs were located, to take the plaintiffs' deposition. The defendants also brought a separate defamation action against the plaintiffs in Nevada. Based on the conduct of the defendants and their lawyers, the plaintiffs brought a lawsuit against them in Arizona, claiming abuse of process and wrongful institution of civil proceedings. The defendants and their lawyers moved to dismiss for lack of personal jurisdiction.

The plaintiffs argued that there was specific jurisdiction in Arizona because the defendants and their lawyers had committed intentional acts expressly aimed at Arizona – *e.g.*, they had made phone calls and sent emails to plaintiffs in Arizona, they had initiated proceedings in Arizona to take the plaintiffs' depositions, and they had served the Nevada defamation complaint on the plaintiffs in Arizona. The Ninth Circuit upheld the district court's ruling that this was not sufficient to establish specific jurisdiction. It underscored that, per the Supreme Court's *Walden* decision, *see Walden* 134 S. Ct. at 1115, "the 'mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.'" *Morrill*, 873 F.3d at 1143. It also noted that, in *Calder v. Jones*, 465 U.S. 783 (1984), a defamation case, specific jurisdiction did not turn simply on the fact that the plaintiff, who was based in the forum state, had suffered harm in the forum state. Rather, what was important was the fact that the defendants had published the allegedly defamatory statements in the forum state.

> Here, by contrast, Plaintiffs elected to work outside of [the forum state] Arizona in order to participate as counsel in the [construction project] Tharaldson Litigation that was conducted in Nevada. The allegedly tortious conduct [by the defendants and their lawyers] involved very limited communications and proceedings in Arizona, all of which arose out of and were component parts in the litigation in Nevada. Any links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email about the Tharaldson Litigation, occurred only because it happened to be where Plaintiffs resided. The primary effects of Defendants' actions, including the alleged harm, were tied directly to the litigation in Nevada. . . . [E]ven the deposition subpoena process [in Arizona], which is a significant basis for Plaintiffs' claim of jurisdiction in Arizona, was [ultimately and] definitively adjudicated in Nevada [because the Arizona court quashed the subpoena but without prejudice to a de novo review by the Nevada court].
>
> Because Defendants knew that Plaintiffs were from Arizona, it was

6

>foreseeable that some injury to them could have been experienced there based on the actions taken by Defendants in connection with the Tharaldson Litigation. Harm suffered in the forum state is a necessary element in establishing purposeful direction. However, the potential foreseeability of some incidental harm to Plaintiffs in Arizona due to substantial litigation that was pending in Nevada, without more, does not show that Defendants expressly targeted the forum state. "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. *It also obscures the reality that none of [the] challenged conduct had anything to do with [the forum state] itself."* *Calder* adopted the rule that to establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there.

*Id.* at 1144-45 (emphasis added).

Similar to *Morrill*, the reality in the instant case is that the alleged misconduct had little or nothing to do California but rather was tied to Nevada. Although GoMoment, which is based in California, developed and maintained the Ivy platform, it was Caesars that implemented and used the platform in Nevada to commit the alleged TCPA violation. *See* Compl. ¶ 11. The fact that GoMoment's corporate headquarters are in California neither informed nor influenced any aspect of this litigation; the location of GoMoment's headquarters is merely a happenstance. *See Morrill*, 873 F.3d. at 1145; *see also Walden*, 571 U.S. at 286 (noting that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State") (internal quotation marks omitted).

For the foregoing reasons, the Court holds that Mr. Castillo has failed to make a prima facie showing of personal jurisdiction. The Court, however, does not dismiss the action based on the lack of personal jurisdiction because 28 U.S.C. C. § 1631 allows this Court to transfer as an alternative to dismissal. Section 1631 provides that, when "a court finds that there is a want of jurisdiction" over a civil action, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. The Ninth Circuit has held that "transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." *Amity Rubberized Pen Co. v. Market Quest Grp., Inc.*, 793

F.3d 991, 996-97 (9th Cir. 2015) (transferring a patent case over which the Ninth Circuit had no jurisdiction to the Federal Circuit); *see also Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (finding lack of personal jurisdiction but transferring to Illinois pursuant to § 1631).[4]

In the instant case, there is no dispute that the District of Nevada has personal jurisdiction over Caesars. Moreover, there is no real dispute that a significant part of the events took place in Nevada, including but not limited to Caesars's decision to send the text messages and the receipt of those text messages by guests after checking into the Caesars hotel. Finally, there is no apparent frivolousness or bad faith with respect to Mr. Castillo's claims. A transfer to the District of Nevada is therefore appropriate.

Finally, the Court notes that, even if it *did* have personal jurisdiction over Caesars with respect to the instant case, it would still find a transfer to the District of Nevada proper pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). As indicated above, there is no dispute in the instant case that Mr. Castillo could have brought his lawsuit in the District of Nevada. And the factors typically considered in a § 1404(a) analysis weigh in favor of transfer. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing factors); *Vu v. Ortho-Mcneil Pharm., Inc.*, 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009) (same).

For example, although a plaintiff's choice of forum is typically afforded deference, such deference is not owed where the plaintiff brings a class action, the plaintiff does not reside in the

---

[4] At the hearing, the Court referenced transfer pursuant to 28 U.S.C. § 1406 rather than § 1631. Section 1406 provides in relevant part as follows: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss or, if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Although the statute refers to improper venue, the Supreme Court indicated that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). In light of the Ninth Circuit's decision in *Gray*, however, the Court transfers pursuant to § 1631 but notes that the "interest of justice" standard applies to both § 1406 and § 1631.

8

forum, and/or no relevant action took place in the forum. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting that, "[w]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight"); *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (indicating that a plaintiff's choice of forum receives "minimal consideration" when the forum has no relation to the operative facts of the case and no specific interest in the parties or subject matter); *Young v. Wells Fargo & Co.*, No. C 08-3735 SI, 2008 WL 5245894, at *3 (N.D. Cal. Dec. 17, 2008) (noting that a court may give a plaintiff's choice of forum "considerably less weight" when he does not reside in the forum). All three of these considerations factor into the instant case: Mr. Castillo is bringing a nationwide class action; he resides in the Central District of California, not the Northern District; and the relevant events took place in the District of Nevada, not the Northern District of California.

Mr. Castillo argues that convenience of the witnesses weighs in favor of the Northern District of California because GoMoment is located in the Central District of California and it would prefer a forum in California rather than an out-of-state forum (*i.e.*, the District of Nevada). But while GoMoment may well be a witness in the instant case, it does not appear to be a crucial witness because, as alleged in the complaint, it simply provided a platform for Caesars to use and nothing more. The critical witnesses will be Caesars's employees – *e.g.*, those who made the decision to send the text messages.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied and the Court transfers the instant case to the District of Nevada. The Clerk of the Court is ordered to immediately effectuate the transfer of this case.

This order disposes of Docket No. 20.

**IT IS SO ORDERED**.

Dated: November 28, 2018

_____
EDWARD M. CHEN
United States District Judge

9